Schweitzer vs. Connor.

SCHWEITZER vs. CONNOR.

*February 3 — February 20, 1883.*

SALE OF LAND. *(1) Instrument construed to be a contract.*
DAMAGES: *(2) For unlawful cutting of timber. (3) When court may
increase amount of verdict.*

1. An instrument in the following form: "Received of J. S. $25.
This amount is paid to secure [description of land], at $9 per acre,
upon condition that on March 15th the one third of the whole
amount, being the first payment, shall then be made.— J. E. &
Co.," on which is indorsed a memorandum: "March 15, 1878, first
payment to be made, $317; March 15, 1879, second payment to be
made, with interest, from the first; March 15, 1880, third payment
to be made, with interest, from the first," is not a mere receipt,
but is a complete contract for the sale of the land, and parol evi-
dence to show that the pine timber on the land was reserved by
the vendors is inadmissible. It is immaterial that the instrument
was not signed by the vendee, he having accepted it.

2. Where pine timber was cut upon the lands embraced in such con-
tract by persons claiming to be licensed thereto by the vendors,
the rule of damages prescribed by sec. 4269, R. S., for a wrongful
cutting, is applicable.

3. Where, upon the admitted facts, the court might properly have
directed a verdict for a certain sum, and the jury, not following
the instructions of the court, found a verdict for a less sum, it was
not error for the court to increase the amount of such verdict by
applying the correct rule of damages.

APPEAL from the Circuit Court for *Wood* County.

Action for a trespass upon the plaintiff's land, and the
cutting and carrying away of a large quantity of pine tim-
ber therefrom. The answer, besides a general denial, alleged
that the timber was the property of John Edwards and
Thos. B. Scott, and that the defendant cut and carried it
away by virtue of a license from them.

Upon the trial the plaintiff testified that on January 10,
1878, he paid to Mr. Edwards $25 to apply on the purchase
of the land from which the timber was cut, and received

from him the written instrument which is set out in the opinion, *infra;* that on March 22, 1878, he paid $275 more, and that one year later he made another payment of $241; also that he went into possession of the premises on April 1, 1878. The defendant offered to show that the instrument of January 10, 1878, was intended merely as a receipt, and not as a contract. The court, however, ruled that the instrument was a contract, and excluded all testimony to show that the agreement was that the pine timber should be reserved from the sale.

Mr. Edwards testified that when the payment of $275 was made on March 22, 1878, it was agreed that the balance of the purchase price should be paid in three annual instalments of $225.33 each, with interest; and that the payment in March, 1878, was the first of such instalments.

It was agreed that the legal record title to the premises remained in Edwards and Scott (John Edwards & Co.), and that the defendant, in cutting the timber, acted under a sale from them and by their direction.

Other facts sufficiently appear from the opinion. The defendant appealed from a judgment in favor of the plaintiff.

The cause was submitted for the appellant on the brief of *Powers & Briggs,* and for the respondent on that of *G. W. Cate.*

For the appellant it was contended, *inter alia,* that the writing of January 10th was not sufficient to make a binding contract. A memorandum of agreement is not sufficient where it does not show all the conditions. *McGuire v. Stevens,* 42 Miss., 724; *Riley v. Farnsworth,* 116 Mass., 223; Pomeroy on Sp. Perf., 129–131. The whole contract, to be valid, must be in writing. *Thomas v. Sowards,* 25 Wis., 631; *Campbell v. Thomas,* 42 id., 437; *Thayer v. Luce,* 22 Ohio St., 62.

To the point that the writing was a contract and could not be contradicted by parol evidence, counsel for the respondent

cited: *Clifford v. Baessman*, 41 Wis., 597; *Stapleton v. King*, 33 Iowa, 28; 2 White & Tudor's L. C., 948.

COLE, C. J.   If the circuit court was right in treating the instrument of January 10, 1878, as a contract for the sale of real estate,— and not a receipt merely,— then indubitably the rulings, excluding all parol evidence to show that the pine timber on the land was reserved by the vendors, were correct.   That instrument reads as follows:

"PORT EDWARDS, WIS., January 10, 1878.

"Received of *Jacob Schweitzer* $25.   This amount is paid to secure that portion of the S. W. ¼ of section (21) twenty-one, town (25) twenty-five, range (4) four, that lies south of the W. C. R. R., at $9 per acre, upon condition that on March 15th the one third of the whole amount, being the first payment, shall then be made.

"$25.                           JOHN EDWARDS & Co."

On the back of this instrument is this memorandum: "March 15, 1878, first payment to be made, $317.   March 15, 1879, second payment to be made, with interest from the first.   March 15, 1880, third payment to be made, with interest from the first."

The evidence fails to show clearly when this memorandum as to payments was made; but it is a fair inference that it was so made when the instrument was executed.   This being the case, there can be no doubt that the instrument contained all the essentials of a complete contract for the sale of real estate, and of course parol evidence could not be given to contradict or vary its terms.   The fact that the writing was not signed by the vendee would not affect its validity as an agreement because he accepted it and was bound by it.   *Vilas v. Dickinson*, 13 Wis., 488; *Lowber v. Connit*, 36 Wis., 177; *Hutchinson v. C. & N. W. Railway Co.*, 37 Wis., 582.   But looking at the whole instrument it must be regarded as a good legal contract, sufficiently spe-

cific in its terms as to price, time of payments, and description of the land sold. It purports to be, and was doubtless intended by the parties to be, something more than a receipt for $25. It secured to the purchaser the right to the legal title providing he should make the payments as fixed. It therefore stood upon the same footing as other written contracts, and was not open to explanation or contradiction by parol. This rule is too familiar to require the citation of authorities in its support. It is true, payment was not made on the 15th of March, as the contract required, but, nevertheless, money was paid and received upon it on the 22d of the month, which was a waiver of the condition. At this time, likewise, there was a change as to future payments; and the learned counsel for the defendant claims that the original contract was then abandoned, and a new parol contract for the sale of the land was made. But the evidence does not sustain this position. Mr. Edwards himself testified that "the only alteration on the 22d of March was in regard to the payments." In all other respects it appears the contract was left unchanged, and fixes the rights of the parties to it. It certainly does not reserve to the vendors the right to the standing pine on the land sold, as claimed by defendant's counsel. Nor could the fact that such a reservation was made be shown by parol.

This brings us to the question of damages. In the answer the defendant avers that the pine timber on the land was owned by Edwards and Scott, and he alleges that he cut and removed the same by virtue of a license from them. But we have seen that the written contract made no reservation of the pine timber to the vendors, therefore a license from them afforded no excuse or justification for the trespass. The evidence shows that the plaintiff went into possession under the contract on the 1st of April, 1878, and made improvements upon the land. He paid, or offered to pay, all that was due on the contract. He put himself in the position to

demand a conveyance of the legal title from the vendors. He was the equitable owner, and upon the facts there can be no doubt that the timber was wrongfully cut and removed. This necessarily follows from the view we have taken of the written agreement. There is no pretense that the timber was cut under any mistake of fact; indeed, no such defense was set up in the answer. If there was any mistake in the matter it was rather one of law as to the rights of the parties under this instrument. Such being the case, the statute determines the measure of damages to be the highest market value of the timber or lumber, in whatsoever condition or shape it may be, whether manufactured or not, while in the possession of the wrong-doer. Sec. 4269, R. S.

This is the rule prescribed by the legislature, and was not established by this court, as suggested by the learned circuit court in its charge. If the rule is an unjust or oppressive one, the remedy is with the legislature; but, while the law remains upon the statute book, effect must be given to it in all cases which fairly come within its intent and meaning. Here was a trespass wholly unlawful and unauthorized. The defendant had no more right to cut and remove the timber under the license set up in the answer, than though the absolute legal title had been in the plaintiff. His act was not only *wrongful*, but the character of the trespass was not attempted to be mitigated under the statute, even if it could have been upon the admitted facts. The case comes fully within the decision in *Webber v. Quaw*, 46 Wis., 118, and other cases of that class where the statute has been applied. In *Smith v. Sherry*, 54 Wis., 114, we said the question — whether this rule of damages would be applied in an action of trespass brought by a tax-title claimant, who had never been in actual possession, as against the original owner, who had removed timber from the land embraced in the tax deed — was an open one. But that is a very different case

from the one presented on this record. While, therefore, the rule prescribed by the statute may operate harshly in some cases, there are no facts here which justify us in saying it does not apply and fix the measure of damages.

The circuit court directed the jury that the plaintiff was entitled to recover the price of the lumber manufactured from the logs by the defendant. The instruction was unquestionably correct. But the jury only gave the plaintiff the value of the logs at the mill, which amounted to $735. The court, on motion, increased the verdict to $1,176, when the plaintiff remitted $176 to bring the amount within the sum claimed in the complaint. It is insisted that the court had no power to increase the damages as found by the jury. In our consideration of the case we have found this the most troublesome question we have had to determine. But, upon the facts of this case, we have concluded it was not an error which should reverse the judgment. It was agreed on the trial that the amount of timber cut by the defendant and manufactured into lumber was 147,000 feet, board measure. It was also an admitted fact that the value of the logs at the mill was five dollars per thousand feet, and that lumber was worth from eight to twelve dollars per thousand feet. These facts were agreed upon or admitted, and all the court did was to apply the statutory rule of damages to them. The court had the power to direct the jury to find a verdict for at least $1,176. Had the court done this, error could not have been predicated upon its action. About the correctness of this view there can be no doubt. Or had the court returned the verdict to the jury with the direction that they must give one for at least $1,176, and immediately received it back increased to that amount, it would not have been error. Such a power has often been exercised by trial courts without question; because, where all the essential facts which can affect the decision are admitted or undisputed, it is the province of the court to apply the proper rule of

Schweitzer vs. Connor.

law to the case. So, where the point arises, as it did in *Gammon v. Abrams*, 53 Wis., 323, whether a party had acted within a reasonable time, the facts being admitted, the question became one of law for the court. So, in case of a special verdict, the court applies the law to the facts found by the jury. In practice the judgment of a court is the conclusion of law upon the facts found or admitted by the parties, or upon their default in the course of the suit. Tidd's Pr., 930.

It is the duty of the jury to respond as to the facts, and of the court as to the law. This is a maxim of our jurisprudence. So the court, on demurrer to evidence or pleadings, on special verdicts, in granting nonsuits and in setting aside verdicts, exercises this power, applies the law to the admitted facts, and determines the controversy. Now, when the value and quantity of the lumber manufactured from the logs was admitted, there was really nothing for the jury to ascertain, no fact to be found. As we have said, the court might have directed the jury to return a verdict for the plaintiff for $1,176, damages, and the defendant could have taken no valid exception to such a direction. What was done amounted in substance to the same thing. The jury evidently made a mistake in not following the instruction of the court as to the rule of damages. But upon the admitted facts we are inclined to think the court had power to increase the verdict so as to give the statutory rule. At all events, we should not be justified in reversing the judgment for this irregularity or error,— if it were one,— in view of the statute which declares that in every stage of the action an error or defect in the proceedings which does not affect the substantial rights of the adverse party should be disregarded. Sec. 2829, R. S.

*By the Court.*— The judgment of the circuit court is affirmed.