[Civil No. 2088. Filed May 24, 1924.]

[226 Pac. 203.]

GEORGE FORNARA and JOSEPH VALDRINI, Appellants, v. I. F. WOLPE, Appellee.

1. BROKERS—BROKER'S COUNTS ON EXPRESS CONTRACT AND ON QUANTUM MERUIT HELD PROPERLY SUBMITTED. — In action for broker's commission on two counts, one on express and other on implied contract, where uncontradicted evidence was that reasonable value of services under implied contract was same as compensation pleaded in express contract, it was not error to submit case on both counts under instruction to find for plaintiff, if at all, in the amount prayed for.

2. BROKERS—COMPENSATION RECOVERABLE UNDER PLEA OF QUANTUM MERUIT ORDINARILY THAT ALLOWED BY CUSTOM OR USAGE.— In absence of express agreement, the amount recoverable by broker is ordinarily the amount allowed by custom or usage prevailing locally among that class of brokers.

3. JUDGMENT — TRIAL—JUDGMENT NOTWITHSTANDING VERDICT OR RETURN FOR FURTHER CONSIDERATION HELD PROPER ON DISREGARD OF

------

1.   See 21 R. C. L. 495.
2.   See 4 R. C. L. 332.
3.   See 15 R. C. L. 606.

COURT'S INSTRUCTIONS.—In broker's action for a commission in two counts one on express and other on implied contract, where evidence established value of services under implied contract same as pleaded in express contract, and court instructed to find for plaintiff in particular amount, if at all, under Civ. Code 1913, paragraphs 423, 541, 548, it was the duty of the court, when the jury returned the verdict in a lesser amount, to either return it for further consideration or render judgment for the amount prayed, notwithstanding the verdict.

4. BROKERS—COMMISSION NOT LOST BECAUSE OWNER ACCEPTED LOWER FIGURE THAN ORIGINAL LISTING.—A broker with whom property has been listed at a particular price is not deprived of his right to commission because the owner personally closes deal with one produced by the broker at a lower figure.

5. TRIAL — INSTRUCTION IN BROKER'S ACTION FOR COMMISSION HELD NOT ERRONEOUS AS COMMENT ON EVIDENCE.—In action for broker's commission, instruction to weigh factor that "defendants completed the arrangements themselves, and were satisfied with less amount" than previous listing *held* not erroneous as comment on evidence, in view of entire instructions.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. Benton Dick, for Appellants.

Messrs. Gandy & Cunningham, for Appellee.

McALISTER, C. J.—Appellee, I. F. Wolpe, recovered judgment against George Fornara and Joseph Valdrini for $1,050 for services as a real estate broker and they appeal.

The complaint contains two causes of action, one based upon an express and the other upon an implied contract. In the first, the plaintiff alleges that at the

4. Effect on right to commissions of fact that owner sells to broker's customers at reduced price, see notes in 9 Ann. Cas. 433; Ann. Cas. 1913D, 821; 15 L. R. A. (N. S.) 272; 34 L. R. A. (N. S.) 1050. See, also, 4 R. C. L. 322.

5. See 14 R. C. L. 817.

See 9 C. J. 78, 601, 660; 23 Cyc. 778; 38 Cyc. 1779, 1894.

special instance and request of the defendants he rendered services in obtaining a tenant or lessee for their hotel property located at the northwest corner of Washington and Fifth Streets, city of Phoenix, for which they promised and agreed to pay him the usual and customary commission paid in that vicinity to real estate agents for like services, to wit, 5 per cent of the amount of the rental for the first year and 2½ per cent of the amount for the succeeding years; that he found and procured a lessee, namely, the Grand Hotel Company, a corporation, for a term of ten years, at a rental of $2,700 for the first year and $36,600 for the succeeding nine years, and that the reasonable value of his services is $1,050, no part of which has been paid, though payment has been requested. The allegations of the second cause of action are the same in all respects except this: They omit the allegation of promised payment, and rely upon an implied promise to pay the commission customarily paid brokers in the vicinity of Phoenix for like services, which it alleges to be 5 per cent of the amount of the first year's rental and 2½ per cent of that of the succeeding years.

The answer is a complete denial of both causes of action.

The case was tried with the aid of a jury, which returned a verdict in favor of the plaintiff for $525, whereupon he moved for judgment for $1,050, the full amount asked for, notwithstanding the verdict, and this was granted by the court.

It appears from the testimony of appellee, who was at that time a real estate agent and broker in Phoenix, that in the fall of 1921 the defendants authorized him to find a tenant for a hotel they were then building; that he put his sign on the building and ran advertisements in the daily papers. That appellants gave him the following terms for a ten-year lease: $275 per month for the first year, $300 the second,

26 Ariz.—25

$325 the third, $325 the fourth, and $350 the remaining years, or a total of $39,900; that he told them his commission would be 5 per cent of the amount of rental for the first year and 2½ per cent of that for the remaining years, which was the customary and usual rate in that vicinity as well as that fixed by the Realty Board of Phoenix, and amounted to $1,080; that Valdrini talked with Fornara, who was present during their conversation, and then said to appellee: "All right, you go ahead and get that man. We will talk business"; that early in November he told one Henry Shry, then proprietor of the Annex Hotel in Phoenix, of this hotel and took him to see it and while there viewing it introduced him to its owners, the appellants; that he afterwards took one of the latter to look at the Annex Hotel for the purpose of gaining pointers, either concerning Shry or the new building; that Shry was agreeable to the deal, but that thereafter there ensued negotiations regarding the arrangements and changes in the building and terms of lease, in which one or both of the defendants and Shry or Wolpe took part, and that appellants within a short time, without the knowledge of appellee, and on about the same terms given him by appellants, consummated the lease with Shry, who took it in the name of the Grand Hotel Company, a corporation which was organized by him solely for this purpose, and whose stock was held by him and his wife.

T. M. Burroughs, a real estate broker in the city of Phoenix for fifteen years, called in behalf of appellee, testified that he was acquainted with the usual and customary schedule of commissions for leasing property in Phoenix, and that it was 5 per cent for the first year and 2½ per cent, for the years thereafter.

The evidence in behalf of appellants was directed entirely to the question of the employment of appellee

and the rendition of services by him. Valdrini testified that Wolpe was not employed to obtain a tenant for the property, and that he did not do so, though he admitted that the latter viewed it with Shry, who later took a lease on it in the name of the Grand Hotel Company. Neither he nor his partner, Fornara, however, said anything about the amount of the commission. Their defense was no employment and no service rendered, and if they succeeded in either necessarily no commission whatever could be collected, but if they failed in both appellee was entitled to recover, and the only evidence upon which a verdict for the amount due could be based was that given by him and the witness Burroughs. Hence the court instructed the jury that if it found that the defendants were liable to the plaintiff there was no dispute as to the amount due, and their verdict should be for the full sum asked for, to wit, $1,050.

Appellants' first assignment attacks this instruction upon the ground that the case was submitted upon both causes of action, or rather upon both counts, an express contract and a *quantum meruit,* it being their contention that if the jury concluded appellants were liable upon the implied contract it was deprived of the right to say what the reasonable value of the services was. But under the testimony the amount due appellee, if any at all, whether upon the express or the implied promise, was not in dispute, the evidence on that question being absolutely uncontradicted and of such a nature—not opposed to the probabilities of the case—that it should not have been disregarded. 23 C. J. 42. In discussing the weight to be given the uncontradicted testimony of a witness having personal knowledge of the market value of a commodity at a given time and place, the court said in effect (syllabus) in *McNamara* v. *Georgia Cotton Co.,* 10 Ga. App. 669, 73 S. E. 1092:

"Testimony of a witness having personal knowledge as to the market value of a commodity at a given time and place is evidence of a substantive fact, and, if undisputed, will demand a finding that the commodity was of the value fixed by the witness. In such a case, the jury cannot arbitrarily disregard such testimony and substitute their own opinion as to the market value of the commodity."

If, therefore, appellants were liable at all, they were liable for the sum shown by the evidence, and the only issue which could possibly have arisen under either count relative to the amount was not how much but whether the full sum asked for or none was due. If the agreement were an express one, it was the full sum claimed, because the testimony was that appellee told appellants his commission would be 5 per cent of the first year's rental and 2½ per cent of that for the remaining years; and, if it were an implied one, the amount was the same, because the evidence discloses that the customary charge in the city of Phoenix for procuring tenants was 5 per cent of the first year's rental and 2½ per cent of that for the remaining years, and in the absence of a special agreement the agent is entitled to a reasonable compensation which, ordinarily, is the amount allowed by the custom or usage prevailing locally among that class of brokers. 9 C. J. 580. In *Webb* v. *Wolfard,* 56 Or. 394, 108 Pac. 1005, the court used this language:

"Nothing was said by either of them at that time regarding the amount to be paid as commission. Under such circumstances, the law implies a promise on the part of defendant to pay the usual or customary commission charged in that neighborhood for like services, if it were shown there was such a customary rate, or, if not, then the reasonable value of the services rendered would be the measure of defendant's liability."

In line with its view of the law as announced in the foregoing instruction, the court granted appellee's

motion for judgment for $1,050 notwithstanding the verdict, and in so doing did not commit error. As stated above, it was immaterial whether the jury's determination of the question of liability was based upon the express or the implied contract; the result was the same in either instance. There was therefore, under the proof, no issue to go to the jury upon the question of the amount, and any finding thereon contrary to the uncontroverted evidence should have been treated as surplusage. A verdict in the words, "We, the jury, duly impaneled and sworn, upon our oaths do find for the plaintiff in the sum of $1,050," would have submitted the only issue upon the amount, or in its stead one omitting all reference to the sum would have sufficed. The fact, however, that the form of verdict given the jury did not name the amount but left it to be inserted by that body did not justify a verdict for an amount less than that shown by the uncontroverted evidence. Hence, when the verdict disclosed that the jury had found for appellee but had fixed the amount of recovery at $525, instead of $1,050, it was the duty of the court to disregard such error or defect and render judgment for the proper sum. In no other way could the court have prevented the judgment from being affected by such error and have given effect to the provisions of paragraph 423, Revised Statutes 1913, which reads as follows:

"The court shall in every stage of an action disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

Paragraph 548, Revised Statutes 1913, it is true, provides that judgments shall conform to the verdict, but this refers only to verdicts which "comprehend the whole issue, or all the issues submitted to them." Paragraph 541, Revised Statutes 1913. If the jury goes beyond this and decides issues not submitted

to it, its action to that extent is without force or effect. Where, therefore, the only issue under the uncontradicted evidence was whether the full amount alleged and proven or none was due, a verdict for any sum other than the whole or none comprehended an issue not submitted, and was properly disregarded. Such was the holding in *Pierce* v. *Schaden,* 62 Cal. 283, a suit on a promissory note amounting to $710. The jury found for the plaintiff in the sum of $294 against the defendants who were indorsers; the theory being that they should not be required to pay the full amount. In concluding that the jury should have given judgment for the full sum shown to be due, the court said:

"The answer denied the presentation of the note to the maker, the demand of payment, the refusal to pay, and notice of presentation, demand, and refusal. There was no denial of the execution or indorsement of the note, and no plea of payment. There was therefore no issue to go to the jury except as to presentation, demand, refusal to pay and notice. The jury returned a verdict in the following form: 'We, the jury in the above-entitled cause, find for the plaintiff, and assess his damages at the sum of $294.50.' The plaintiff moved for judgment for the amount of the note and interest, which motion was denied, and judgment was entered for the amount named in the verdict. The plaintiff was entitled to his motion. The jury had nothing to do with matters not in issue, and a verdict referring to such matters is, so far, surplusage. So far as the verdict related to matters in issue, it was in favor of plaintiff. The court should have computed the amount due on the note for principal and interest, and rendered judgment accordingly. Judgment vacated, and cause remanded, with instructions to make computation and render judgment in accordance with this opinion."

To the same effect see *Harris* v. *McLaughlin,* 39 Colo. 459, 90 Pac. 93; *Wentworth* v. *King* (Tex. Civ. App.), 49 S. W. 696; *Schweitzer* v. *Connor,* 57 Wis.

177, 14 N. W. 922; *Shenners Co.* v. *Delzer,* 169 Wis. 507, 173 N. W. 209.

The verdict not being responsive to the issues submitted, the court should have called the attention of the jury thereto and have sent it back for further deliberation, but for some reason this was not done. What it did do, however, amounted practically to the same thing, and at that stage of the trial was the only way it could comply with the latter portion of paragraph 548, providing that the judgment "shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." The verdict against appellants established appellee's right to full relief, and it was the duty of the court to see that he obtained this whether by directing the jury to insert the proper amount or by itself rendering judgment for it notwithstanding the jury's failure to do so. The presumption is that in finding appellants liable the jury was governed by the evidence, and therefore that its insertion of $525 instead of $1,050 was not a compromise but merely an error or irregularity. Such being true, a substantial right of appellee was not thereby affected. As said by the court in *Schweitzer* v. *Connor, supra:*

"The court might have directed the jury to return a verdict for the plaintiff for $1,176, damages, and the defendant could have taken no valid exception to such a direction. What was done amounted in substance to the same thing. The jury evidently made a mistake in not following the instruction of the court as to the rule of damages. But upon the admitted facts we are inclined to think the court had power to increase the verdict so as to give the statutory rule. At all events, we should not be justified in reversing the judgment for this irregularity or error, if it were one, in view of the statute which declares that in every stage of the action an error or defect in the proceedings which does not affect the substantial rights of the adverse party should be disregarded."

The jury was instructed that in deciding whether appellee procured a tenant for appellants' building it was—

"not material and necessary that the rent agreed upon should be exactly the same as that which plaintiff testified was given him by defendants as their price. If it is approximately the same, it will be considered as if it were the same. In addition to that, there are two other controlling factors. The first is that, if the plaintiff was to procure a tenant, the terms of that employment are fulfilled when he does so, and the rent finally agreed upon is immaterial. The second is that the defendants completed the arrangement themselves and were satisfied with a less amount which precludes them from basing any defense upon the fact that there was some difference in the amount originally asked and the amount specified in the lease."

The objection to the first part of this instruction, that if there was an agreement whereby appellee was to procure a tenant at a certain rental and one was procured at a lower figure, appellee could not recover, is not sustainable. While the pleading and proof are that appellee was given certain terms upon which the property would be leased, yet, if he brought it to the notice of the person who afterwards purchased it, the fact that the owners themselves consummated the deal and voluntarily took a less sum than that given appellee would not deprive the latter of his right to the commission. *Roberts* v. *Markham,* 26 Okl. 387, 109 Pac. 127; *Schlegal* v. *Allerton,* 65 Conn. 260, 32 Atl. 363. In *Plant* v. *Thompson,* 42 Kan. 664, 16 Am. St. Rep. 512, 22 Pac. 726, the following syllabus appears:

"An agent employed to sell real estate, who first brings it to the notice of the person who ultimately becomes the purchaser, is entitled to his commissions on the sale, although the latter is effected by the owner of the property, nor can the owner evade his liability to pay the agent his commissions by

selling for a sum less than the price given the agent, when the reduction is made of the owner's own accord.''

The expression, the ''defendants completed the arrangement themselves,'' it is contended, is a comment on the evidence, because it ''assumes that there was some arrangement between plaintiff and defendants whereby a tenant was to be procured.'' By the word ''arrangement'' as here used, appellants refer to the original employment, while the court in using that term was merely directing the attention of the jury to the latter end or conclusion of the negotiations without reference to how, when, or by whom they were initiated. It had already instructed that appellee must have been employed to procure a tenant and have rendered that service, and, though there was a dispute as to who began the negotiations, there was absolutely none concerning the fact that appellants and the Grand Hotel Company completed them. If it were intended that this term should convey the impression that appellee initiated the negotiations, it is apparent, in view of the entire instructions, and the jury could not have understood otherwise, that it was further intended that it should have such effect only in case the jury found appellee had begun them.

A discussion of the remaining assignments is unnecessary.

The judgment is affirmed.

ROSS and LYMAN, JJ., concur.