[Civil No. 2959. Filed April 27, 1931.]

[298 Pac. 402.]

ROBERT NARDELLI, Appellant, v. T. C. TRIP-LETT BUILDING COMPANY, a Corporation, as Trustee of H. M. JACOBS, FRANK STOCKTON and Itself, Appellee.

Mr. Carl R. Tisor and Messrs. Richey & Richey, for Appellant.

Messrs. Conner & Jones, for Appellee.

ROSS, J.—This action was brought by the T. C. Triplett Building Company, hereinafter referred to as plaintiff or building company, against Robert Nardelli, to recover brokerage commissions. Judgment went for the plaintiff, and defendant appeals.

In the amended complaint the plaintiff is described as suing "as trustee of an express trust for H. M. Jacobs, Frank Stockton, and itself." The subject matter, its location, the contract, and services rendered are averred in count 1 of said amended complaint as follows:

"That heretofore and on or about March 14, 1929, the defendant was the owner of a lease of the Heidel Hotel in said city (Tucson) and of certain hotel furniture and equipment therein; that on said day he listed the said property with this plaintiff for sale and the plaintiff and the defendant then and in the city of Tucson entered into a contract whereby it was agreed that if the plaintiff secured a buyer of the said lease and property for the price of $20,000, or any price defendant might accept therefor, he, the

defendant, would pay to the plaintiff a commission of ten per cent. of such purchase price.

"That thereafter, this plaintiff did interest, produce and secure a buyer of said lease and property, to-wit, one J. W. Ellis and his wife, who did on or about the 8th day of June, 1929, purchase the same from the defendant for the sum of $18,000. . . .

"That the said H. M. Jacobs and Frank Stockton performed services in and about the procuring of said purchaser and it was agreed between them and the T. C. Triplett Building Company that they should own the said commission jointly and that each should have an undivided one-third interest therein."

In a second count the rate of commissions is upon a *quantum meruit;* otherwise the facts are the same.

At the close of plaintiff's case and at the close of the whole case defendant moved for an instructed verdict on the ground that plaintiff had failed to prove any trust as between defendant Nardelli and plaintiff, or as between defendant and Jacobs and Stockton. The denial of this motion is assigned as error. It is to be noted that the contract alleged is between the building company and Nardelli; also that the building company procured the buyer of the property. Jacobs and Stockton were not parties to the contract, and it does not appear that such contract was made or entered into by the building company for their benefit. The building company was not "a trustee of an express trust" for Jacobs and Stockton nor authorized, under section 3727. of the Revised Code of 1928, to. bring suit on such contract for their benefit. Under the contract the building company alone was authorized to sell defendant's property, and to it only was it agreed to pay commissions. While it is alleged that Jacobs and Stockton performed services in procuring purchaser, since they had no contract with defendant their only authority to render such services must have been derived from the building company; and, likewise, if

they are to be compensated for such services, it must be by the building company, and not by defendant. The latter is unconcerned as to the private understanding or agreement between the building company and Jacobs and Stockton that they would split the commissions in three ways, one-third to each.

Under the contract alleged and, we assume, the one proven since no question on that point is made, the only proper party plaintiff was the building company for its sole benefit. However, we cannot see how defendant was or could have been injured by the allegation that plaintiff was suing in the capacity of "trustee of an express trust for H. M. Jacobs, and Frank Stockton, and itself," since upon the face of the complaint it is clearly shown that the contract was with the plaintiff and that "plaintiff did interest, produce and secure a buyer," etc. We think the allegation of which complaint is made can and should be treated as mere surplusage. Such allegation might very properly have been stricken without in the least affecting the cause of action otherwise alleged against defendant.

Complaint is made of the refusal of the court to give a requested instruction raising the same question, but what is said above makes it unnecessary to further discuss this point.

It is next said the evidence conclusively shows that defendant was to receive $18,000 net, and that plaintiff was to receive no compensation unless the property sold for more than that. The property was listed with plaintiff for $20,000, and defendant could have refused to accept a less sum without any liability for commissions, but he could not reduce this price to the offered purchaser and thereby defeat the broker's claim for commissions. *Fornara* v. *Wolpe*, 26 Ariz. 383, 226 Pac. 203. There was evidence, however, to the effect that a commission was to be paid upon any price that defendant might ac-

cept, and, in view of such evidence, it was for the jury to say what the contract was on that point.

It is next said the court erred in commenting on the evidence in the presence of the jury. The witness Jacobs, on cross-examination, was asked by defendant's counsel whether the selling price of the property was "stated at the top of the listing card," which was answered in the affirmative. Then this question was asked of the witness:

" '$20,000 gross, $18,000 net to Nardelli,' that is stated at the top, is it not?"

As a matter of fact, there was nothing whatever on the listing card in reference to the net to Nardelli, and the question called for and received a protest from opposing counsel. Then followed some dispute and contention between counsel, until the court interrupted saying:

"Let's try to stick to the facts. The fact is now this witness—while of course, we all know as a matter of arithmetic, it figures $18,000 net—this witness here said it was a gross sale, that the sale price was $20,000, out of which a commission of ten per cent. was to be paid. Now that is the deal."

After this statement there followed this colloquy between counsel for defendant and the court:

"Mr. Richey: Now, if your Honor please, we do not desire to pass that statement of the court at this time with reference to that because Mr. Smith testified with reference to this matter, and Mr. Smith, who made the deal, testified 'if that sold for $20,000 we would get $2,000—$18,000 net to him.'

"The Court: Certainly.

"Mr. Richey: That was the agreement. We never had any other agreement.

"The Court: Certainly, that is what this card, the effect of the card is. Proceed.

"Mr. Richey: I am talking about the testimony now, if your Honor please."

All this conversation between counsel and the court was occasioned by the question to the witness wherein it was assumed as a fact that the listing card gave both a net and gross sale price of the property. With the listing card before it, the court undertook to correct counsel by advising him "to stick to the facts," and in that connection stated what was shown, not only by the listing card, but by the evidence; that is, that the gross sale price was $20,000, out of which a commission of 10 per cent was to be paid. The expression of the court, "now that is the deal," is made much of. However, what was said by defendant's counsel, and thereafter acquiesced in by the court, must have convinced the jury that the court did not intend to say that the deal was not as contended for by defendant, but did intend to correct the false assumption in the question put to the witness.

We have examined all the assignments and are unable to agree with defendant's contention that any error was committed prejudicing his rights.

The judgment is affirmed, with this direction: That it be made to conform with the pleadings as herein construed.

McALISTER, C. J., and LOCKWOOD, J., concur.