NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

US EXPRESS LEASING, INC.; CIT TECHNOLOGY FINANCING
SERVICES, INC.; BANC OF AMERICA LEASING & CAPITAL, LLC,
*Plaintiffs/Appellees*,

*v.*

LAURA LELAND and BRIAN LELAND wife and husband,
*Defendants/Appellants*.

No. 1 CA-CV 13-0360
FILED 06-24-2014

———————————————

Appeal from the Superior Court in Maricopa County
No.  CV2008-022375
The Honorable Randall H. Warner, Judge

**AFFIRMED**

———————————————

COUNSEL

Jaburg & Wilk, PC, Phoenix
By Rodger L. Cohen, Kathi M. Sandweiss
*Counsel for Plaintiff/Appellee US Express*

David N. Ingrassia, PC, Phoenix
By David N. Ingrassia
*Counsel for Plaintiff/Appellee CIT*

Poli & Ball, PLC, Phoenix
By Michael N. Poli, Lawrence R. Moon
*Counsel for Plaintiff/Appellee Banc of America*

The McBride Law Firm, PC, Scottsdale
By Melanie G. McBride, Keith A. Gernant
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1    Laura Leland (Leland) appeals the trial court's denial of her motion for new trial filed pursuant to Arizona Rule of Civil Procedure 59(a).[1]  For the reasons stated below, we affirm.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2    Bryan Bartel (Bartel) and Jane Doe Bartel were the sole owners of All H2, Inc., a corporation authorized to transact business in Arizona under the registered trade name of Copyrite Business Equipment (Copyrite).  Leland, a sales agent of Copyrite, received compensation in the form of commissions and salary based upon the value of the equipment she sold or leased for Copyrite.

¶3    From June 2007 through January 2008, Copyrite, Bartel, and Leland (Copyrite defendants) claimed to have sold and delivered to Robert Kubicek Architects and Associates (Kubicek), more than $703,019 in industrial grade copy and printing equipment (new equipment).  In fact, the Copyrite defendants entered fictitious serial numbers for new equipment on fraudulent lease agreements which Copyrite then paid a Kubicek employee $55,000 to sign.  USXL, Banc America, CIT, and GE, (financing companies) then paid the Copyrite defendants $703,019 for the alleged sales and deliveries to Kubicek.[3]  However, Kubicek never

---

[1] Absent material revisions after the relevant dates, we cite the current version of the statutes and rules unless otherwise indicated.

[2] In reviewing the denial of a motion for new trial, we view the evidence in the light most favorable to sustaining the verdict. *Hutcherson v. City of Phx.*, 192 Ariz. 51, 53, ¶¶ 12-13, 961 P.2d 449, 451 (1998).

[3] The Copyrite defendants stated, "CopyRite [sic][] entered into a series of contracts in which CopyRite [sic] sold equipment to the Leasing

received the majority of the equipment reflected on the financing agreements.

**¶4** Kubicek only became aware of the transactions between the Copyrite defendants and his employee when the company's controller discovered the firm's leased equipment expenses were significantly higher than the historical average, apparently due to Kubicek's payment of $262,119 on invoices received from the financing companies for the phantom new equipment.

**¶5** In September 2011, Kubicek filed a complaint in the Maricopa County Superior Court against the Copyrite defendants and the financing companies. The financing companies brought separate counterclaims against Kubicek and crossclaims against the Copyrite defendants.[4] Prior to trial, Kubicek settled with the financing companies and dismissed claims against the Copyright defendants. The leasing companies and the Copyrite defendants then went to trial on the leasing companies' crossclaims.

**¶6** The jury entered forty-one verdicts in favor of the financing companies. In summary, the jury found: (1) Copyrite liable for breach of contract; (2) Copyrite and Bartel liable for negligent hiring and supervision; (3) Copyrite responsible for Leland's acts based upon *respondeat superior* liability; and (4) Bartel and Leland liable for negligent misrepresentation, fraud and unlawful activity in favor of CIT financing company.[5]

**¶7** The jury awarded damages[6] to the three financing companies in the following amounts: full damages against Copyrite in the amount of $3.00; full damages against Bartel in the amount of $447,737.51;

---

[financing] Companies, which would simultaneously lease the equipment to Kubicek."

[4] Given the complexity of the claims, counterclaims, and crossclaims, we offer only a summary of the underlying proceedings as the issues on appeal relate solely to the denial of Leland's motion for new trial.

[5] Leasing Company, CIT, alone alleged a pattern of unlawful activity against the Copyrite defendants.

[6] We aggregate the amount of damages awarded to the financing companies.

and full damages against Leland in the amount of $111,934.38.[7] Collectively, the jury awarded the finance companies punitive damages against: (1) Copyrite in the amount of $3.00; (2) Bartel in the amount of $1,119,343.78; and (3) Leland in the amount of $300,000.00.[8]

**¶8** After the trial court announced the verdicts, dismissed the jury, and concluded the trial, the Copyrite defendants filed a motion for new trial, pursuant to Rule 59(a), asserting: the jury finding of both fraud and negligent misrepresentation was an inconsistent verdict; the jury verdicts awarding punitive damages failed to indicate whether the awards were for negligent misrepresentation, intentional misrepresentation or both; and the jury award of punitive damages was without evidence of the defendants' financial conditions.

**¶9** In denying the defendants' motion for new trial, the trial court held the fraud and negligent misrepresentation verdicts were not inconsistent: the evidence supported a finding the Copyrite defendants both intentionally defrauded the financing companies, and failed to exercise reasonable care in communicating information regarding the transaction as required for a negligent misrepresentation claim. The trial court also found the punitive damage instruction was not in error as the instruction clearly informed the jury it could not award punitive damages unless it found the Copyrite defendants acted with an evil mind, and "[o]ne can commit the tort of negligent misrepresentation while acting with an evil mind."[9] Ruling on the Copyrite defendants' third assertion,

---

[7] We aggregate the amount of damages awarded to the financing companies.

[8] The Copyrite defendants subsequently filed an "Objection to the Form of Judgment" pursuant to Arizona Rule of Civil Procedure 58(d). As a result, the trial court amended the form of judgment to conform with the verdict, finding Copyrite liable for the total amount of compensatory damages awarded to USXL, CIT, and Banc of America "because [Copyrite] [was] liable for the acts of both Leland and Bartel."

[9] The requirement of an "evil mind" in a punitive damage award must be evidenced by a "conscious action of a reprehensible character." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331, 723 P.2d 675, 680 (1986). Central to the award is the wrongdoer's intent to injure the plaintiff or "his deliberate interference with the rights of others, consciously disregarding the unjustifiably substantial risk of significant harm to them." *Id.* (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1989)). Thus, "evidence of an 'evil mind' and aggravated and outrageous

the trial court found evidence of defendants' financial condition was not required when submitting the issue of punitive damages to the jury, and that the Copyrite defendants waived this argument by failing to raise it during trial.

**¶10** Finally, the trial court conceded the jury should have awarded the entire amount of damages against Copyrite, given the jury instructions on *respondeat superior* liability, but held the defendants waived this argument by failing to raise it at the time of the verdict when the jury's mistake might have been remedied.

**¶11** Leland timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1) (2014).

## DISCUSSION

**¶12** The grant or denial of a motion for new trial is addressed to the sound discretion of the trial court. *Rodriguez v. Williams*, 107 Ariz. 458, 460, 489 P.2d 268, 270 (1971). We review the denial of a motion for new trial for an abuse of discretion. *Hutcherson*, 192 Ariz. at 53, ¶ 12, 961 P.2d at 451.

**¶13** Leland argues the trial court erred by refusing to order a new trial as the jury's verdict was contrary to law. Further, Leland contends: (1) she did not have to raise the inconsistency of the amounts of damages under Rule 49(c); and (2) the trial court should have granted her Rule 59 motion because, in denying her motion, the trial court stated the jury incorrectly applied the law of *respondeat superior.*

**¶14** Rule 59(a)(8) allows a trial court to grant a new trial when a verdict is contrary to law. However, a trial court's grant of a motion for

---

conduct" is necessary for a jury to award punitive damages. *Id.* In the immediate case, the jury instructions stated that an award of punitive damages might enter if the jury were to find "fraud, negligent supervision or pattern of unlawful activity." Clearly, both fraud and pattern of illegal activity allow for an award of punitive damages. The jury found for plaintiff in regard to fraud, negligent supervision, and pattern of unlawful activity. Following the jury's verdict, no objection was interposed to the inclusion of negligent supervision as allowing an award of punitive damages and Leland, therefore, waived her right to object. Ariz. R. Civ. P. 51(a).

new trial is premised upon the party's conformity with Arizona Rule of Civil Procedure 49(c), which states in pertinent part: "If the verdict is . . . defective, the court may direct it to be reformed at the bar . . . . If the verdict is not responsive to the issue submitted to the jury, the court shall call the jurors' attention thereto, and send them back for further deliberation."

¶15            The purpose of Rule 49(c) is to permit a correction of the verdict before the jury is excused, and thus advance the efficient operation of the courts. *See Gonzalez v. Gonzalez,* 181 Ariz. 32, 35, 887 P.2d 562, 565 (App. 1994). Furthermore, Rule 49(c) discourages litigants from jury-shopping by "permitting them to decide whether to take their chances on resubmitting the verdict and findings to the then-sitting jury, or remain silent thereby allowing the entry of judgment and moving for a new trial before a new jury." *Id.* at 36, 887 P.2d at 566 (quoting *Cundiff v. Washburn,* 393 F.2d 505, 507 (7th Cir. 1968)).

¶16            Leland concedes failure to object to the jury verdicts at the time the verdicts were rendered, but asserts Rule 59 does not require the party moving for a new trial to raise an objection while the jury remains empanelled. Instead, Leland contends Rule 49(c) places the burden of informing the jury of defective or inconsistent verdicts upon the trial court rather than the aggrieved party. Although Rule 49(c) permits a trial court to reform a defective verdict, the party, not the court, moves for a new trial pursuant to Rule 59; therefore, the party must necessarily raise issues of defective verdicts, including verdicts contrary to law, at the time the verdict is rendered. *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 543, ¶ 39, 48 P.3d 485, 493 (App. 2002) ("If Trustmark believed the jury verdict was inconsistent, defective, or nonresponsive to its negligence claim, Trustmark should have moved, before the jury was excused, for resubmission of the case to the jury pursuant to Rule 49(c). . . . However, Trustmark did not invoke Rule 49(c). By not challenging the verdict when rendered, Trustmark waived its objection to any error.") (internal citations omitted).

¶17            In support of her position, Leland cites *Southern Pacific Railroad Company v. Mitchell,* 80 Ariz. 50, 292 P.2d 827 (1956), for the proposition that, "the court has the power to put a manifestly irregular or defective verdict in such form as to make it conform to the intention of the jury, and carry their findings into effect, where the intention can be ascertained with certainty." In *Southern Pacific,* after discharging the jury, the trial court amended a defective verdict in conformity with the intention of the jury. *Id.* at 65-66, 292 P.2d at 837. However, contrary to

Leland's position, the trial court only did so after the aggrieved party moved to amend the verdict, obtained affidavits of each jury member attesting to their intention, and the trial court held a subsequent hearing to determine the jury's intent. *Id.* at 65, 292 P.2d at 837. As a result, the *Southern Pacific* Court concluded the trial court had "jurisdiction to grant the [party's] motion to amend or correct the verdict." *Id.*

**¶18** Leland also cites *Fornara v. Wolpe*, 26 Ariz. 383, 226 P. 203 (1924), and *Flanders v. Maricopa County,* 203 Ariz. 368, 54 P.3d 837 (App. 2002), for her assertion the trial court, rather than the aggrieved party, should bring unresponsive verdicts to the jury's attention and send the jury back for further deliberation. Leland's reliance upon these cases is unavailing as well. In *Fornara*, the trial court properly disregarded a defective verdict after a party objected to the verdict when rendered. 26 Ariz. at 385, 388-89, 226 P. at 204-05 ("[T]he court granted appellee's motion for judgment for $1,050 notwithstanding the verdict, and in so doing did not commit error.").

**¶19** In *Flanders*, the jury returned two verdict forms indicating a different amount of compensatory damages for each claim. 203 Ariz. at 374, ¶ 41, 54 P.3d at 843. "After consulting with counsel, the court instructed the jury that the amount on each verdict form must be the same." *Id.* at 374-75, ¶ 41, 54 P.3d 843-44. This Court affirmed the trial court's actions, noting that the trial court properly complied with Rule 49(c) by calling the "jurors' attention to a defect in the verdict and 'send[ing] them back for further deliberation.'" *Id.* at 375, ¶ 45, 54 P.3d at 844. Although *Flanders* teaches a trial court may reform a jury verdict under Rule 49(c) after consulting with counsel, an aggrieved party must object to the verdict at the time it is rendered if that party later moves for a new trial. *See Trustmark,* 202 Ariz. at 543, ¶ 39, 48 P.3d at 493.

**¶20** Thus, by failing to challenge the verdict when rendered, Leland waived her ability to object on the ground the jury's assignment of damages to her, rather than to Copyrite, was contrary to law. *Id.* ("By not challenging the verdict when rendered, [the party] waived its objection to any error.").[10]

---

[10] As Leland waived her claim that the verdict was contrary to law, we need not reach the question whether the doctrine of *respondeat superior* precludes the assignment of damages against Leland.

**CONCLUSION**

**¶21**         For the foregoing reasons, we affirm the trial court's denial of Leland's motion for new trial.  Appellee CIT requests attorneys' fees and costs pursuant to A.R.S. § 13-2314.04(A) (2014) as the action involved a pattern of racketeering activity.  In the exercise of our discretion, we grant CIT reasonable attorneys' fees on appeal and costs in an amount to be determined upon compliance with ARCAP 21(c).



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh