250 P.2d 589

### BOWSER et al. v. SANDIGE et al.
### No. 5560.

Supreme Court of Arizona.
Dec. 1, 1952.

Rehearing Denied Dec. 16, 1952.

398

V. L. Hash and Virginia Hash, of Phoenix, for appellants.

Carl W. Divelbiss, of Phoenix, for appellees.

PHELPS, Justice.

This is an action by John R. Sandige individually, and doing business as Sandige Realty Company, and J. D. Marihugh versus D. H. Bowser and wife for commission on the sale of real property. The parties will be referred to as plaintiffs and defendants throughout. On February 6, 1950, defendants listed with plaintiffs for sale a certain forty-acre tract of land belonging to them for the sum of $22,500. The listing contract was not exclusive and provided that "the right to offer the above described property for sale is to remain in your hands until 5–6–1950 and thereafter until terminated by me." The contract was not terminated by the Bowsers on May 6, 1950, and in fact was not attempted to be terminated until September 11 or 12, 1950. On September 11, 1950 Marihugh informed Bowser that he had a purchaser for the premises in question for the sum of $20,000 and according to Marihugh's testimony at that time, he exhibited to Bowser a written offer by a Mr. Mahoney and his wife together with their check for $5000 as earnest money. In what manner the written offer was exhibited to Bowser the record does not disclose. If the check was exhibited it was never in Bowser's hands. Marihugh

said he could have seen it, and that he did not try to conceal the signature thereon. Bowser denies having seen the check or the written offer but admitted that Marihugh told him he had a check for $5000 in his pocket. Marihugh did not by word of mouth, at least, give Bowser the name of the prospective purchaser. The defendant Bowser first testified that the listing agreement was terminated on September 16. Later he said it was either the 11th or 12th of that month. It is immaterial whether the contract was terminated on September 11, 12 or 16 so far as the rights of the parties are concerned.

At the time of the offer of $20,000, Bowser told Marihugh that his wife had decided she didn't want to sell the place. Bowser said that he terminated the contract at that time. We believe that the statement made by Bowser to Marihugh at that time amounted to a termination of the listing contract with plaintiffs, however it does not affect the right of the parties as to services already rendered as we will hereinafter point out. Marihugh later returned to Bowser with an offer for $21,000 which he said was the purchaser's top figure. Bowser again told him that he would not accept it and that his wife had decided not to sell, or preferred to keep the property.

At no time, according to the testimony of Bowser, Mahoney and Marihugh, did Bowser meet the prospective purchaser nor did Marihugh give Mahoney Bowser's home address. In addition to the Bowser property, Marihugh showed Mahoney a number of other tracts of land out in the Tolleson and Glendale areas. From all outward appearances after September 16 Mahoney was no longer a prospective purchaser and the Bowser property was withdrawn from the market and all other real estate brokers who had it listed had been so notified over the phone by Bowser.

Mahoney later decided that the Bowser land was the only tract shown him by Marihugh in which he was at all interested. During the month of October he ascertained from a man in Glendale where Bowser lived and found that he lived on Elm Drive. He then called upon Mr. Bowser and asked him if he would sell him the property. Bowser told him he had leased the property and it was off the market and he wouldn't sell it. Mahoney stated they later stopped to ask Bowser if he knew of a place for sale around Glendale and was informed by him that he did not. They did not then attempt to buy the Bowser property. Later, on about October 21st they went to Bowser again and asked him to sell the property to them. Bowser told them he would sell it if he could find a place that suited him. He stated they offered Bowser $21,000 for the property; that Bowser later found a place that suited him and then told them he would accept $21,440 for the property, $21,000 payable direct to Bowser and $440 by assuming and paying outstanding notes to the Water Users for pump water rights on the land which they agreed to pay,

and the transaction was consummated on October 23.

The cause was tried to the court sitting without a jury and at the close of all the evidence judgment was ordered entered for the plaintiffs from which this appeal is prosecuted.

Defendants have assigned as error:

First, that the court erred in granting judgment for plaintiffs for the reason that the plaintiffs did not perform their contract of employment in that they neither put defendants in contact with the purchasers nor procured an offer in the sum of $22,500 which was the list price in the contract.

Second, for the reason that the evidence shows bad faith on the part of plaintiffs in suggesting an offer of $20,000 to the prospective purchaser when the list price was $22,500.

Third, that the court erred in denying defendants' counsel the right to cross-examine the defendant after he was cross-examined by plaintiff as an adverse witness under the rules of court.

Fourth, that the court erred in admitting the written offer of the purchaser without first showing that such offer had been shown to defendants.

■ There is but little conflict in the evidence in this case, the only conflict being that Marihugh testified he exhibited the written offer and earnest money check to Bowser and that Bowser could have seen Mahoney's name on the check (which would have informed him of the identity of the prospective purchaser). Bowser unequivocally denied Marihugh's statement and asserted that he saw neither of the documents and never heard of the Mahoneys until they came to his home some three weeks later and tried to purchase the property in question. Marihugh testified that when he called Bowser after seeing him and Mahoney at the Title Company and asked him if he had sold the property and received an affirmative reply, he asked Bowser to whom he sold such property and that Bowser replied, "Why, I sold it to those people you showed the place to"; that Bowser further stated at the time, "The Mahoneys came to me and told me they didn't think you could make a deal for them so they preferred to deal directly with me." Bowser thereafter took the witness stand and did not deny having made these statements to Marihugh. We must therefore assume that the trial judge accepted them as true and found as a matter of fact that Bowser did know at the time he sold the property to Mahoney that he was the identical person who had previously made him an offer of $21,000 through Marihugh and that Marihugh had shown the property to Mahoney early in September. We must further assume that the trial judge concluded as a matter of law that Marihugh was the efficient, proximate and procuring cause of the sale. The testimony of Mahoney that Marihugh showed him many parcels of property but that the Bowser property "was the only place that suited us.

that we seen" we think substantially sustains the conclusion reached by the court and the judgment rendered by it. We also believe the sale to Mahoney was within such reasonable time after being shown by Marihugh as to justify the court's conclusion and judgment.

We held in Fink v. Williamson, 62 Ariz. 379, 158 P.2d 159, that if a broker was the efficient, proximate and procuring cause of the sale of real estate listed with him he was entitled to his commission even though the transaction was handled and closed by another broker. Citing Garver v. Thoman, 15 Ariz. 38, 135 P. 724. We also quoted in that case from Fornara v. Wolpe, 26 Ariz. 383, 226 P. 203, to the effect that if the broker brought the property to the attention of the purchaser he was entitled to his commission even though the owners themselves consummated the deal. In that case there was a little difference in the facts from the instant case. There the prospective purchaser was actually introduced to the owner of the property. In this case the court evidently found that Bowser knew the purchaser to be the identical person who made the offer through the plaintiff Marihugh.

■ With reference to the third assignment of error we will only observe that if defendant had plead bad faith on the part of the broker as was done in Haymes v. Rogers, 70 Ariz. 408, 222 P.2d 789, 17 A. L.R.2d 896, we would be in a position to consider that question. But since it was not plead we are without authority to do so.

■ With respect to the further question raised by plaintiffs to the effect that they should have been allowed to cross-examine their own witness who had been called for cross-examination as an adverse witness under the statute, at this time we neither affirm nor overrule the rule laid down in Podol v. Jacobs, 65 Ariz. 50, 173 P.2d 758, but limit this opinion to the statement that even though error was committed it was harmless because all of the facts that could then have been developed on cross-examination were later presented to the court when Bowser was called as defendants' witness in chief.

■ We further hold that the admission by the court of plaintiffs' Exhibit B, being the written offer of Mahoney to purchase the property, was error. Certainly under the circumstances of this case where the agent is suing his principal relying in part upon a written offer to purchase real property from his principal which he never showed the principal, knowledge of its contents by the agent could under no circumstances be imputed to the principal because their interests are adverse but its admission in evidence is also harmless error because it is immaterial whether the offer was oral or in writing, it was rejected by the defendants and could not have formed any basis for the judgment rendered by the court. Both parties litigant admit the offer was made.

402

Under the record as presented we have no alternative but to affirm the judgment of the trial court. It is so ordered.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.