**Aaron A. RISKIN, Plaintiff,**

v.

**BALTIMORE & OHIO RAILROAD COMPANY, a corporation, Henry Lee, and Capitol City Liquor Company, Inc., a corporation, Defendants.**

**Civ. A. No. 855–61.**

United States District Court
District of Columbia.

Oct. 26, 1964.

Herman Miller, Washington, D. C., for plaintiff.

Laidler B. Mackall, Steptoe & Johnson, Washington, D. C., for defendant Baltimore & Ohio R. Co.

Philip P. Marenberg, Washington, D. C., for defendants Capitol City Liquor Co., Inc., and Henry Lee.

KEECH, District Judge.

This is an action in three counts to recover a broker's commission. The first is based on an alleged contract with the Baltimore & Ohio Railroad Company to sell a certain parcel of land, known to the Railroad as the University Tract. The second and third counts lie in tort, alleging interference with plaintiff's rights under the said contract and a conspiracy to deprive plaintiff of his commission.

Plaintiff is a licensed real estate broker in the District of Columbia. He was accustomed to passing the University Tract driving to and from work in 1959. In March of that year, plaintiff discovered through his plat books who the owner of this tract was, and accordingly contacted the Baltimore & Ohio Railroad Company. At this time he was informed by a Mr. Bauer, a representative of the Railroad, that the property was not for sale. In December of 1959, he contacted the Railroad again and was informed by a Mr. Pluebell that the property would be available to a buyer who could meet the qualifications of the Railroad. In January of 1960, plaintiff learned of a party who was looking for a site for a

warehouse with railroad access. Plaintiff contacted such party (Mr. Lee, President of the Capitol City Liquor Company, Inc.) and took him and his son to see the property. Mr. Lee displayed considerable interest and the next day, at Lee's request, plaintiff supplied him with a plat of the tract copied out of plaintiff's plat book. Lee then announced that he wanted to make an offer, and plaintiff arranged a meeting at Mr. Pluebell's office. At this meeting, the court finds, it was made abundantly clear that the parties (i. e., the prospective buyer and the representative of the Railroad) already knew and had been dealing with each other. Except for a delivery of some documents from the Lees to the Baltimore & Ohio Railroad Company which the plaintiff claims to have made, arranging this meeting was the last act of the plaintiff with regard to the sale of this property. Thereafter Lee negotiated directly with the Railroad, until a contract was signed on August 16, 1960.

During trial, the action against Capitol City Liquor Company, Inc., was dismissed by consent of the parties.

Three issues are presented by this case, which the court will consider in inverse order: (1) Did Mr. Pluebell have authority to contract with plaintiff to sell property for the Baltimore & Ohio Railroad Company; (2) was a contract entered into with respect to the University Tract; and (3) was plaintiff in fact the procuring cause of the sale of that Tract?

The record shows that the Lees had been dealing with the Baltimore & Ohio Railroad Company for approximately six months prior to their inspection of the University Tract with plaintiff, with a view to locating a site for a larger warehouse along the Railroad. Mr. Pluebell had taken the Lees to see several properties, belonging, respectively, to the Railroad and to others. The testimony shows that, when plaintiff took Mr. Lee and his son to Mr. Pluebell's office, the Lees and Mr. Pluebell were familiar with one another already and the visit immediately took on the aspect of a social gathering. Thus plaintiff was aware, as of that time, that the parties had been negotiating previously with each other. From this time on, plaintiff was relatively or completely out of the picture.

It is true that a broker is entitled to his commission where he has brought the parties together, even though he is precluded from the remaining negotiations. Clark v. Morris, 30 App.D.C. 553, 556. The mere fact that the parties had previously dealt with one another and discussed the purchase of other properties would not alter the broker's rights, provided he were the predominant factor in bringing the two parties together culminating in the sale of this particular property. Nor would the fact that the parties had previously negotiated with regard to this particular property deprive the broker of his commission, if his efforts were predominant in the resumption and completion of fruitful negotiations.

Although prior to the meeting arranged by plaintiff the Lees had been principally interested in smaller properties, the evidence here is not only that the University Tract had been mentioned to them prior to such meeting, but that, as testified by one witness, a plat thereof had been shown to them. Moreover, negotiations with the Lees cannot be said to have broken off; rather, they appear to have been undergoing a slow but steady development. While not dwelling on any specific property, discussions had been held regularly with regard to available properties, the needs of the Lees, and the traffic which they might generate for the Railroad. Thus it cannot be said that the plaintiff introduced the Lees either generally or in respect to this property in particular; nor can it be said that plaintiff was responsible for repairing broken-down negotiations. Plaintiff's own conduct is hardly consistent with a genuine belief that he had produced these prospective purchasers. A broker claiming a $27,000 commission does not step aside to let negotiations take what course they will, following a meeting at which interest is expressed,

with little or no further action. Such conduct could only reassure the parties that the broker's intervention had indeed been gratuitous. A broker is not entitled to a commission merely by finding a purchaser; he must be the direct and proximate cause of the sale. First Nat. Realty Corp. v. Blackwell Realty Co., 77 A.2d 319 (D.C.Mun.App.1950).

■■ Furthermore, before a broker can recover his commission, even if he is the procuring cause, he must show that he was commissioned to do so by the party sought to be charged. Eggleton v. Vaughn, 45 A.2d 362 (D.C.Mun.App. 1946). Otherwise he is a mere interloper. In the instant case, plaintiff relies on a statement by Mr. Pluebell, District Freight Agent for the Baltimore & Ohio Railroad Company, that if plaintiff had a purchaser who could qualify with the railroad as to freight requirements and financial responsibility the Railroad would sell the property. There was no writing supporting the alleged contract, nor was there any mention of compensation. In fact the whole conversation was more consistent with a mere willingness to sell to any qualified purchasers whom the plaintiff might be representing, than with an undertaking by the plaintiff to represent the Railroad in the sale of the property. While it is true that the contract need not fail for lack of mutuality, and that the commission may be implied in cases such as this, nevertheless the evidence of intent is, in the instant case, not sufficient to be legally binding. This is especially true in light of Section 1408 (n), Title 45 of the D.C.Code (1961 ed.), which provides that a broker shall be subject to revocation or suspension of his license if he offers property for sale or rent without the written consent of the owner. It is true that this law provides only for the discipline of brokers who violate its provisions and does not nullify oral brokerage contracts. Shaffer v. Berger, 81 A.2d 469 (D.C.Mun.App. 1951). However, in view of the public policy expressed by the statute, this court is constrained to interpret such oral contracts strictly against the broker. The statements attributed to Mr. Pluebell were ambiguous. They did not indicate whether they were intended to authorize plaintiff actively to find a purchaser on behalf of the Railroad, or merely indicated a willingness to sell the property to qualified purchasers for whom the plaintiff might be the agent. This is particularly true in view of the fact that plaintiff merely told Mr. Pluebell at that time that he had someone who was interested in the property. At one point in the record, plaintiff testified that the statement upon which he relied was Mr. Pluebell's remark that if plaintiff had a qualified purchaser "we will be glad to entertain such an offer."

Moreover, Mr. Pluebell was not authorized to employ the plaintiff as a broker. Mr. Pluebell was in the freight traffic department, and his interest was not in the sale of real estate, but primarily in locating freight-producing industries along the Baltimore & Ohio Railroad lines. His only dealing with prospective purchasers of real estate was to determine their freight-producing potential and to pass this information on through his superiors to the real estate division.

■ Plaintiff does not claim there was any actual *express* authority. Plaintiff claims that there was actual authority implied from a course of conduct acquiesced in by the principal. 2 C.J.S. Agency § 99 (1936); Restatement, Agency 2d, § 43 (1958). To support this contention, plaintiff introduced evidence that the University Tract had been once before sold through Mr. Pluebell's office; that Mr. Pluebell had been conducting negotiations previously with Mr. Lee and had shown him several properties; and that initial inquiries for the purchase of Railroad real estate in this area normally proceeded through Mr. Pluebell's office. This evidence is not convincing. At best, it indicates only implied authority to conduct initial negotiations with regard to Railroad real estate. There is no evidence to support the necessary further showing of authority in Mr. Pluebell to hire a real estate broker. It

is well established that an agent cannot hire a sub-agent unless he has authority to do so. Weinberg and Bush, Inc. v. Murray, 188 F.Supp. 263, 266. Clearly Mr. Pluebell's authority here was to investigate the freight potential of prospective purchasers and transmit such information with recommendations to the real estate department.

"BALTIMORE & OHIO RR CO—

\* \* \*

Freight Service—
  Freight traffic-rates schedules & serv
  Industrial developments—Sites-bldgs
                    Woodward Bg ................REpblc 7–6500
  Genl freight agt Woodwrd Bg ................REpblc 7–6500
  Dist freight agt Woodwrd Bg ................REpblc 7–6500
                                                                      "

\* \* \*

However, there was no listing of a real estate office. The listing in the yellow pages was substantially identical to the quoted listing. Plaintiff further testified that he was directed by the switchboard operator to speak to Mr. Pluebell. This testimony has no real probative value. These factors were not enough to estop the Railroad from denying Mr. Pluebell's authority to hire a broker. "The person dealing with the agent should ascertain the extent of his authority from the principal, or from some other person who will have a motive to tell the truth in the interests of the principal, and he cannot rely upon the agent's statement or assumption of authority, or upon the mere presumption of authority." 2 C.J. 563, 2 C.J.S. Agency § 93; Metropolitan Cas. Ins. Co. of New York, N. Y. v. Potomac Builders' Supply Co., 61 App. D.C. 255, 256, 61 F.2d 407 (1932). The Railroad never held Mr. Pluebell out as a member of its real estate department; rather, the words "Traffic Department—

Plaintiff further contends that if there was not actual authority to hire him as a broker, there was apparent authority to do so, and that the principal is therefore estopped from denying such authority. Plaintiff relies on the Baltimore & Ohio Railroad Company's listing in the Washington, D. C., Telephone Directory, which read as follows:

General Freight Agent—District Freight Agent" were clearly written in large letters on Mr. Pluebell's office door.

Furthermore, plaintiff has not shown that he knew of any prior negotiations by Mr. Pluebell with regard to any real estate.

■■ The court finds that there was no valid contract, nor authority to contract; hence there could have been no interference nor conspiracy to defraud the plaintiff of his commission, either by the Railroad or by the Lees. See 30 Am.Jur., Interference, § 22 (1958).

Judgment in favor of defendants against plaintiff shall be entered forthwith. The cross-complaint of defendant Baltimore & Ohio Railroad Company against defendant Henry Lee has become moot by virtue of the findings in favor of both defendants in the action brought by plaintiff, and is therefore dismissed.