402 P.2d 577

**Elizabeth K. BRADLEY, d/b/a
Rio Rita Bar, Appellant,**

v.

**Hugh A. WESTERFIELD, d/b/a Westerfield
Realty, Appellee.\***

**2 CA–CIV 54.**

Court of Appeals of Arizona.

June 9, 1965.

Tannenbaum & Tannenbaum, by Kenneth M. Tannenbaum, Tucson, for appellant.

Price & Tinney, by John Price, Tucson, for appellee.

HATHAWAY, Judge.

Hugh A. Westerfield, the plaintiff below, filed suit in Superior Court against Elizabeth K. Bradley, defendant below, to recover a real estate commission allegedly earned by the plaintiff. The case was tried to the court sitting without a jury, judgment was rendered for the plaintiff and defendant appeals.

The sequence of events which gave rise to this lawsuit is as follows: Defendant entered into a business listing agreement with

\* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7876. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

the plaintiff authorizing the plaintiff to procure a purchaser for defendant's business, the Rio Rita Bar. The listing described the business as a bar with a full liquor license. The agreement, signed by the defendant-owner stated:

"In consideration for special effort, to be given to the exhibition of the property described herein, (I) or (We) give Westerfield Realty the right to sell or exchange the property at the price and terms described herein or as subsequently agreed to, for a period of *90* days, or within 90 days after the termination of this listing to any person procured by you during this listing period. *Title to this property is merchantable* and if sale is effected, we agree to pay * * * including the Real Estate Commission of 6 per cent to Westerfield Realty." (Emphasis supplied)

The listing set forth information regarding mortgage encumbrances, namely, first and second mortgages of substantial amounts, requiring monthly payments of $500 and $150 respectively. Within the 90-day period, plaintiff's saleswoman produced a prospective buyer who entered into an agreement with the defendant for the purchase of the business, together with the furniture, fixtures, equipment and the No. 6 Liquor License. The buyer agreed to assume the obligations of the two mortgages, and both parties agreed that the sale was contingent upon procuring the consent, if necessary, of the *first* chattel mortgage holder. Consent of the second chattel mortgagee was not made a condition of the sale.

A portion of the agreement germane to this appeal provided:

"This agreement is contingent upon the approval of a person to person transfer from seller to buyers of the above described Series No. 6 liquor license, and in the event that such approval is not obtained from the Super-

intendent of Liquor Licenses and Control of the State of Arizona, then this agreement shall be null and void and all sums paid hereunder shall be returned to buyers."

Approximately ten days later, the buyer took possession of the business and the escrow agent's closing statement was rendered to her. Within this same period, the buyer's application for a person to person transfer of the liquor license was filed with the Superintendent of Liquor Licenses and Control. The application was approved by the City Council of Tucson and a copy of the approval forwarded to the Superintendent. The escrow agent issued a check for the realty commission to the plaintiff but subsequently directed the bank to stop payment of same for the reason that the second chattel mortgagee, when apprised of the sale, asserted his rights by virtue of a restriction in his favor on the transfer of the liquor license. No transfer of the license could be effectuated without his consent, and he had not assented to the transfer.

This caused the buyer to declare the contract breached by the seller, the application for transfer of the liquor license was withdrawn, and the contract was rescinded by mutual consent. At the pretrial conference, the parties to this action stipulated as follows:

1. The reason for failure to consummate the sale is that the *second* mortgage holder refused to consent to the sale, as was his privilege under his mortgage.

2. The only reason that the liquor license was not transferred to the buyer under the terms of said contract by the Superintendent of Liquor Licenses and Control was that the *second* mortgage holder did not consent to such sale.

3. In the event that it be determined that the Superintendent of Liquor Licenses and Control did not approve this person to person trans-

fer, it is for the same reason, namely, the failure of the *second* mortgagee to approve said transfer.

The sole question to be resolved in this appeal is whether the plaintiff was entitled to a commission despite the fact that the sale was not consummated.

 Generally speaking, a real estate broker has earned his commission when he has brought to the vendor a purchaser who is ready, willing and able to buy the property on the terms authorized or on any terms acceptable to the seller, when the seller has entered into a written contract with a purchaser produced by the broker. Cochran v. Ellsworth, 126 Cal.App.2d 429, 272 P.2d 904, 909 (1954); Diamond v. Haydis, 88 Ariz. 326, 356 P.2d 643, 647 (1960); 12 C.J.S. Brokers § 85(a). It is not a condition precedent to payment of commission, under the foregoing rule, that the sale be consummated.

Through the listing agreement, the defendant-seller employed the broker to effect a sale of the described business which included, *inter alia*, a No. 6 Liquor License. The defendant had nothing to sell in the way of an operating business, namely a bar, unless the sale included the liquor license. On the other hand, one purchasing a bar would certainly require a transfer of the liquor license as he could not lawfully operate without a license duly issued by the Superintendent of Liquor Licenses and Control. 2 A.R.S. § 4–244.

In the instant case, the defendant contracted to sell a business, including a liquor license, and the plaintiff procured a purchaser who agreed to the terms set forth in the listing agreement. The parties entered into a binding contract of sale, providing for excuse of performance if the necessary approval of the license transfer was not obtained. The record discloses that the buyer was qualified to hold the license and that the sole impediment to the license transfer was the refusal of the second chattel mortgagee to consent.

 The defendant had not provided for this contingency nor made it a condition of the sale. The defendant had warranted that the title was merchantable, indicating that she could produce all necessary transfers and conveyances. If through her own fault or inability the defendant became unable to deliver that which she had contracted to sell, that would not excuse her performance of the contract of sale. See Hill v. Hamilton, 368 P.2d 957, 959 (Wyo.1962).

 If an employed broker procures a purchaser ready, willing and able to buy the property on the terms specified by the seller, the broker is entitled to compensation for his services, even though the sale should fall through because the seller who employed the broker is unable to convey good title to the property. Pasley v. Barber, 368 P.2d 549, 551 (Alaska 1962); Sligh v. Watson, 69 Ariz. 373, 214 P.2d 123, 128 (1950); Diamond v. Chiate, 81 Ariz. 86, 300 P.2d 583, 587 (1956).

It is the view of this court that the instant case falls within the oft repeated rule of law laid down by our Supreme Court in Lockett v. Drake, 43 Ariz. 357, 31 P.2d 499 (1934), at page 500:

"* * * It is the almost universally accepted rule of law that, in the absence of a specific contract to the contrary, when a real estate broker has brought together the parties to a sale or exchange of real estate, and they have agreed fully on the terms and entered into a binding contract for such sale or exchange, his duties are at an end and his commission is fully earned, and it is immaterial that the parties to the contract rescind mutually or that one or the other thereof defaults and the sale or exchange is not fully effected."

 The defendant knew, or should have known that there existed a restriction on the transfer of the license in favor of the second chattel mortgagee. In order to deliver merchantable title, the duty to

obtain his consent devolved upon her. Her inability or neglect to procure this consent did not relieve her from the obligation to pay to plaintiff the realty commission. This obligation she incurred when she listed the Rio Rita Bar for sale.

Judgment affirmed.

KRUCKER, C. J., and MOLLOY, J., concur.