531 P.2d 928

**Purna MOHAMED, Appellant,**

v.

**Merrill G. ROBBINS dba Merrill Robbins Realty, Appellee.**

**No. I CA–CIV 2053.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 13, 1975.

Stephen W. Connors, Phoenix, for appellant.

Robbins & Francone by Merrill W. Robbins, Phoenix, for appellee.

## OPINION

WREN, Judge.

This is an appeal from a judgment awarding appellee, Merrill Robbins (plaintiff) a realtor's commission in the sum of $13,000 for the sale of property owned by appellant, Purna Mohamed (defendant). The real estate involved, comprising approximately sixty acres, was sold to the Arizona Highway Department (Department) on January 8, 1971, for $3,750 per acre. The dispositive question before us is whether plaintiff was the procuring cause of the sale. We find that he was.

The chronology of events necessary for disposition of this cause are as follows. On August 18, 1969, plaintiff, a licensed real estate broker, entered into a listing contract with defendant, giving him the exclusive right, for a period of 90 days, to sell the subject property for the sum of $3,700 per acre. This listing also contained a protective clause, under which the defendant agreed to pay a commission if the property was sold to any person whom the plaintiff was negotiating or dealing with upon the expiration of the listing. No time period was specified as to the duration of this clause.

The following month, plaintiff contacted Jim Brundage, in the Right-of-Way Section of the Department, informing him that the land was available for purchase. Brundage advised plaintiff that any request for acquisition by the Department would have to originate in the Materials Section. Plaintiff was then taken to see Jim Latham, assistant materials engineer for the Materials Section, who thereafter had certain preliminary tests performed on the property to determine its suitability for a materials site. These tests proved positive, and on September 23, 1969, Latham forwarded a request for an appraisal to the Right-of-Way Section. Following a title search and drawing of the property, Brundage transmitted the request to the Appraisal Division on November 20, 1969.

The appraisals, completed in January of 1970, valued defendant's land at approximately $2,500 per acre. They were thereafter reviewed by various sections of the Department until November, 1970, when the file was received by Walter Robinson, right-of-way agent in the Department's

Acquisition Division. Robinson thereupon commenced negotiations with defendant.

Meanwhile, though defendant had refused to renew plaintiff's listing following its expiration on or about November 20, 1969, plaintiff continued to remain in contact with the Department regarding progression of the deal, keeping defendant informed accordingly. Early in 1970, Fritz Fiedler, Deputy Chief Right-of-Way Agent, informed plaintiff that he (plaintiff) would need written authorization from defendant to continue the negotiations. However, defendant, when contacted during or about the month of April, 1970, refused to give any such authorization, and thereafter informed plaintiff that her son, Ernest Mohamed (Mohamed) had been empowered to conduct all transactions on the proposed sale.

On December 2, 1970, at a meeting arranged by Robinson, an offer of $2,500 per acre was made to Mohamed. It was rejected and Mohamed then countered with a $6,000 per acre offer. Plaintiff was not present at the meeting. Negotiations thereafter ceased until January 7, 1971, when Mohamed and Robinson again conferred. Further discussions finally resulted in a tentative agreement of $3,750 per acre and on January 8, 1971, the Department made a formal offer of the agreed sum to defendant and she accepted.

The trial court found the sale to be the result of a continuous and unbroken sequence of events and efforts on the part of plaintiff. In addition thereto, and although a period in excess of one year had elapsed from the expiration of the listing agreement to the culmination of the sale, the court found that under the circumstances of the case, the delay involved was not so unreasonable as to preclude recovery by plaintiff as being the procuring cause of the sale.

■ It is well settled real estate law that generally a broker who is the "procuring cause" of a sale under a listing agreement is entitled to a commission. Puente v. Lee, 103 Ariz. 534, 447 P.2d 51 (1968);

Ornamental and Structural Steel, Inc. v. BBG, Inc., 20 Ariz.App. 16, 509 P.2d 1053 (1973). In the absence of a specific agreement to the contrary, if it can be shown that acts constituting the procuring cause occurred during the life of the listing contract, the commission has been earned even though the time provisions thereof may have expired prior to the consummation of the sale. J & B Motors, Inc., v. Margolis, 75 Ariz. 392, 257 P.2d 588 (1953); see Bowser v. Sandige, 74 Ariz. 397, 250 P.2d 589 (1952).

■ In Clark v. Ellsworth, 66 Ariz. 119, 122, 184 P.2d 821, 822 (1947), the term "procuring cause" was defined as follows:

"[A] cause *originating* a series of events which, without break in their continuity, result in accomplishment of the prime objective of employment of the broker— producing a purchaser ready, willing and able to buy real estate on the owner's terms." (Emphasis in original).

■ Addressing these principles of law to the facts before us and construing them, as we must, in a light most favorable to sustaining the judgment of the trial court, we find reasonable support for its finding that plaintiff was the procuring cause of the sale.

Defendant directs us to the fact that plaintiff never contacted, during the period of the listing agreement, any representative of the Department who had authority to effect the purchase, and is therefore not eligible for the commission. We feel this fact to be immaterial to the issue. According to Robert Languth, Supervisor of the Acquisitions Division, various steps must precede any negotiations by the Department to acquire property. Land acquisition must be preceded by request from some department, and according to Latham, a normal function of the Materials Section is to locate suitable property. Defendant's land, being situated on a riverbottom, was apparently suitable for no other purpose than the materials which it contained.

It is evident that plaintiff, within the time limitations of the listing, made contact with an appropriate party (Latham) to commence a sale of defendant's acreage. Latham was informed as to availability and price, and his subsequent request for an appraisal of the land included the statement: "It is the feeling of the Materials Division that it will be advantageous to purchase this property as a materials source." This request set in motion the subsequent series of events which culminated in the purchase. For him to have initially contacted someone in charge of acquisition proved unnecessary to effect the sale.

Defendant further asserts that a broker, to earn a realtor's fee, must be first in point of time to introduce the purchaser to the property, citing *Clark, supra*. She points out that the Department had knowledge of her property even before the listing, as a result of a condemnation action it instituted in 1963 for certain materials situated thereon, and which the Department brought to a successful close in 1966. Because of the filing of that lawsuit in 1963, the defendant attempted unsuccessfully to sell the property for $6,000 per acre to the Department through the office of Justin Herman, Secretary of the Highway Commission. In 1968, defendant made the same offer to Angus Chadwick, an engineer for the Department. This offer was also rejected.

We believe that defendant is incorrect in her interpretation of *Clark*. In *Clark*, the court examined various cases factually similar to the one it was presented with, where a realtor's commission was awarded, even though the broker took no part in the negotiations, never saw the customer, and did nothing except advertise the property. The court in denying recovery to the broker, observed that in each of the cases discussed, unlike the one before it, the broker had been first in point of time to introduce the purchaser to the property. The *Clark* situation is not the one we have here.

While it is true that the initial contact with the purchaser to inform him of the availability of the property is a material and persuasive factor in determining who is the procuring cause of a sale, it is not conclusive. Previous negotiations between a vendor and purchaser do not necessarily deprive the broker of his commission, if his efforts were the procuring cause of the sale. Riskin v. Baltimore & Ohio R.R., 234 F.Supp. 979 (D.D.C.1964); Busker v. United Illuminating Co., 156 Conn. 456, 242 A.2d 708 (1968); Rowland v. Progressive Inv. Co., 202 S.W. 257 (Mo.App.1918).

It is evident here that all prior negotiations between defendant and the Department had broken down and were completely abandoned before plaintiff entered the picture; and that the ultimate sale was the direct result of plaintiff's efforts made during the time limitation of the brokerage agreement. Moreover, the fact that plaintiff took no part in the concluding negotiations is immaterial as long as the procuring cause of the ultimate sale is gleaned in his favor from the evidence. Porter v. Ploughe, 77 Ariz. 33, 266 P.2d 749 (1954); Bowser, *supra*; Fornara v. Wolpe, 26 Ariz. 383, 226 P. 203 (1924).

We also disagree with defendant's contention that negotiations between her and the Department were broken off as a result of their inability to reach an agreement at the December meeting, thereby signaling an end to whatever events may have been set in motion by plaintiff's work during the period of his listing. Clearly, the Department did not thereafter lose interest, as evidenced by Mohamed's testimony that it was Robinson who initiated the next contact with him, in order to arrange the January meeting. The time lapse between the two meetings was not an abnormal one, for as explained by Robinson, after an offer has been rejected, the Department generally lets the matter sit for about a month.

Nor does the evidence bind us to the belief that the December offer, which followed plaintiff's efforts to sell was conclusively indicative of the maximum sum

which the Department was willing to pay for the property. Fiedler testified that any amount paid in excess of the appraised value was considered to be an administrative settlement that had to have the approval of top management. It would seem therefore that offering the appraised value would be merely a perfunctory step, clearing the way for further negotiations.

The Department's subsequent offer in January, for a slightly higher price than specified in plaintiff's listing agreement, evidences plaintiff's compliance with the terms of his contract, by procuring a ready, willing and able purchaser. Bishop v. Norell, 88 Ariz. 148, 353 P.2d 1022 (1960); Demand v. Foley, 11 Ariz.App. 267, 463 P.2d 851 (1970); Bradley v. Westerfield, 1 Ariz.App. 319, 402 P.2d 577 (1965). This is true even though generally, such a purchaser must be produced during the period of the listing. Rohs v. Hickam, 473 P.2d 732 (Colo.App.1970); Libowitz v. Lake Nursing Home, Inc., 35 Wis.2d 74, 150 N.W.2d 439, 151 N.W.2d 680 (1967); Restatement (Second) of Agency § 446 (1958); Mechem on Agency § 2439 (1914). The plaintiff was dealing with the Department when the listing expired, and was therefore entitled to a commission under the protective clause of the contract.

Finally, regarding the fact that no time limit was specified as to the duration of the protective clause, in Stromberg v. Seaton Ranch Company, 160 Mont. 293, 502 P.2d 41 (1972), the court stated in regard thereto:

"Under the usual circumstances time allowed to protect the broker after expiration of the principal listing under a protective paragraph, if no time period is named, is held to be a reasonable time. Reasonable time in transactions of this type is determined by the nature and character of the service to be rendered, magnitude of the undertaking, the intention of the parties, and all the facts and circumstances of the case." 160 Mont. at 308, 502 P.2d at 49.

 Plaintiff stated that following the expiration of the listing, the defendant told him that she was expecting the Department to buy her property. Moreover, according to Languth, it would be impossible for a realtor to initiate interest on the part of the Department and complete a sale within a ninety-day period. The defendant refers us to no evidence that the transaction was charted through the Department other than in the normal course of purchasing procedures. The time lapse between the expiration of the listing agreement and the ultimate sale was found by the trial court to have been reasonable under the circumstances. That determination finds substantial support in the evidence.

The judgment is affirmed.

JACOBSON, P. J., and FROEB, J., concur.