No. 80-195

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

PATRICIA BARRETT,

    Plaintiff and Respondent,

  vs.

LORNA BALLARD,

    Defendant and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
       In and for the County of Carbon.
       Honorable William J. Speare, Judge presiding.

Counsel of Record:

  For Appellant:

    Bridger Law Office; Joseph E. Mudd, Bridger, Montana

  For Respondent:

    Stephen M. Barrett, Bozeman, Montana

Submitted on briefs: November 26, 1980

Decided: DEC 24 1980

Filed: DEC 24 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court to recover damages in the form of a commission from the sale of real estate. The matter was tried to a jury which returned a verdict for plaintiff in the amount of $4,200 plus interest and costs. From this judgment, defendant appeals.

This matter began with a real estate contract, dated March 7, 1975, between respondent realtor and appellant seller. In that contract a written listing agreement was signed setting forth a listing period of six months. On September 7, 1975, respondent and appellant entered into another listing agreement for the same property. During the entire period of the listing, respondent advertised the property in the Billings Gazette and showed the property to several prospective buyers.

Both the first and second listing agreements were signed only by Lorna Ballard and not by her husband, Virgil Ballard. On September 7, the time of the signing of the second listing, respondent showed appellant a list of all parties who might be interested in the property.

On September 20, 1975, respondent advertised the land for sale erroneously as "under $6,000" instead of "$106,000." As a result of this advertisement, William Scilley of Billings, Montana, called respondent about the property. Scilley came from the area in which the land was located and stated that he was interested in purchasing it. Contrary to her usual procedure, respondent gave Scilley the location of the property and the name of owner over the phone.

Several days after this call, respondent went to Billings and discussed the property, terms, and possible

methods of payment with the potential and eventual buyer, William Scilley. Later respondent went to the property to discuss the sale with appellant, Lorna Ballard. When she arrived, Scilley was there talking with Virgil Ballard, appellant's husband. At that time respondent talked to appellant and discussed the buyer, the amount of money that would be required at closing to pay off the underlying mortgages and other necessary information regarding the sale. Respondent then left the property.

On the same day, Scilley made an offer for the purchase of the property. This offer was neither accepted nor rejected by appellant and her husband. Appellant and her husband continued to negotiate with Scilley without advising respondent of these negotiations. A short time later, appellant's husband went to Billings and met with Scilley at his place of business. Virgil Ballard attempted to accept the first offer made by Scilley; however, he was informed that that offer was no longer up for consideration. During that meeting, however, Scilley and Ballard did reach an agreement regarding the sale of the property at a price less than originally offered by Scilley. This agreement was eventually reduced to writing, and the contract for deed was executed in the amount of some $70,000.

During this time appellant made no attempt to make respondent aware of the continued negotiations and efforts with Scilley. Respondent had no opportunity to become involved because appellant did not keep her informed.

Upon learning of the sale, respondent called appellant and requested a commission. Appellant wrote to respondent and acknowledged that respondent had initially obtained the eventual buyer. In one letter appellant stated that she

felt she owed respondent something and would pay $50 a month until the commission was paid. Since payments of $50 a month would take a number of years, respondent suggested that appellant borrow the amount from the bank. After repeated requests for her commission failed, respondent brought this suit against appellant.

Appellant presents seven issues for our consideration.

The first issue is whether the listing agreement dated September 7, 1975, was sufficient to sustain a real estate commission (a) under any facts, and/or (b) under the facts of this case.

Appellant argues that the agreement is inadequate on its face for several reasons: (1) The writing does not adequately identify the property to be sold. (2) The listing does not define its terms. (3) The writing itself does not meet the requirements of specificity.

Relying on section 28-2-603, MCA, which provides, "[w]here a contract has but a single object and such object is . . . wholly impossible of performance or so vaguely expressed as to be wholly unascertainable, the entire contract is void," appellant argues that in view of the fact that a portion of the property was owned solely by Virgil Ballard and he did not sign the agreement or agree to sell the property, the listing on its face could not be performed. 17 Am.Jur.2d Contracts, §7 at 342. Therefore, appellant argues, the contract is void and impossible of performance.

It has long been recognized that a cotenant in joint tenancy has a right and ability to sell her interest. See 20 Am.Jur.2d Cotenancy and Joint Tenants, §16 at 109, which states:

-4-

"Any act of a joint tenant which destroys one or more of its necessarily coexisting unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. The act of one joint tenant in severing his interest in the property by alienation severs the joint tenancy to that extent, so that if there were but two tenants, the joint tenancy is terminated."

This is the law in Montana. See State Board of Equalization v. Cole (1948), 122 Mont. 9, 195 P.2d 989, where the Court construed Section 6680 of the Revised Codes of Montana 1937, which provided a definition of joint interest almost identical to the one existing in today's codes. Construing that statute, the Court said:

". . . For example either co-tenant of a joint tenancy in real property could sever the estate by conveying his interest to a third party and as between the remaining co-tenant and the transferee the new estate became a tenancy in common. . ." 195 P.2d at 994.

See also Cooley v. Veling (1973), 19 Ariz.App. 208, 505 P.2d 1381; Place v. Carmack (1974), 33 Colo.App. 411, 522 P.2d 592; Gilles v. Norman Plumbing Supply Company of Oklahoma City, Inc. (Okla.App. 1975), 549 P.2d 1351; Nelson v. Davis (Utah 1979), 592 P.2d 594.

Appellant relies on the authority set forth in 17 Am.Jur.2d, supra, to support her contention that this is a void contract. We find that although the citation is the correct holding of the law as a general rule, it is not relevant here as the authority is distinguishable on facts. In addition, she argues that the contract is impossible of fulfillment. A California court has noted that "[t]he burden of proving the defense of impossiblity is on the party asserting it." Hensler v. City of Los Angeles (1954), 124 Cal.App.2d 71, 268 P.2d 12.

-5-

Just why the contract is impossible to perform on the part of appellant is not clear. Appellant was free and capable of acting without her husband, even though here the husband knew at all times she had put the property up for sale. The previously cited cases indicate that she has a right to sell. She is capable of entering and performing contracts and being legally responsible for her acts. Impossiblity of performance is a strict standard that can only be maintained where the circumstances truly dictate impossibility. See Smith v. Zepp (1977), 173 Mont. 358, 567 P.2d 923, 927, where this Court held: "The general rule is that, where a party to a contract obligates himself to a legal and possible performance, he must perform in accordance with the contract terms." The fact that a party contracts to sell something he does not own does not raise the defense of impossibility. He may be held liable when he rescinds without legal justification. Federal Deposit Ins. Corporation v. Peterson (1937), 104 Mont. 447, 67 P.2d 305.

In addition, appellant raises the issue that the contract should be declared void due to vagueness. Here, appellant protests too little and too late. No objection of vagueness were made at the time of the signing of the real estate agreement. No objection of vagueness was made at the time the property was advertised for sale. No vagueness argument was made when respondent brought people to the property. There was not any objection of vagueness at the time Scilley made his offer, and no objection of vagueness at the time the sale was consummated. Vagueness was not raised during the trial and, therefore, is not properly before us on appeal.

-6-

Appellant participated in this contract throughout its entire existence. Where vagueness or imprecision in a contract is raised, the courts have set a standard for resolving such questions. In S-W Co. v. Schwenk (1977), 173 Mont. 481, 568 P.2d 145, this Court said:

> "Where ambiguity does exist on the face of the contract, the question of the parties' intent as to the language involved is submitted to the trier of fact. [Citation omitted.] Ambiguity exists when a contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. [Citations omitted.] . . ." 568 P.2d at 147.

As we have previously noted, the trier of fact must take the contract as a whole. We stated further in Schwenk:

> "When a contract is ambiguous, the language of the parties must be considered in light of subject matter and the surrounding circumstances, as well as the positions of the parties at the time the contract was made. [Citations omitted.] . . ." 568 P.2d at 148.

Here, the surrounding circumstances and the positions of the parties clearly indicate their intent to enter into an agreement and to perform that agreement. The parties entered into a written agreement; at the expiration of that agreement they entered into a second listing agreement. During that time respondent continued to advertise the property in local newspapers. In addition, respondent worked with appellant in writing letters for appellant to obtain surveyors to get bids on surveying the property. At the time of the sale appellant stated she felt that respondent was responsible for the sale. Appellant only changed her mind when influenced by her husband. It is interesting to note in the transcript that in answer to a question, appellant stated:

> "Q. So you wrote that letter, excuse me, on November 25th, you thought that she had brought about the sale, but then when your husband told you that he did the sale, you changed your mind. A. Yes."

This Court has held that, when reviewing a conflict in testimony regarding an ambiguity, the trier of fact is entitled to determine the meaning of the contract in its own right. In Dooling v. Casey (1969), 152 Mont. 267, 448 P.2d 749, 754, we stated:

> ". . . Where there is a conflict in the testimony as to the intention of the parties respecting an ambiguity in a contract, determination of the true meaning of the contract is one of fact for the jury. . . Upon appeal, this Court will review the evidence only to the extent of determining whether there is substantial credible evidence supporting the verdict. [Citations omitted.]"

Concerning the issue of vagueness that was raised on appeal, we find that this issue was not raised in the District Court. Thus, it will not be considered on appeal.

The standard of review is that this Court will not review questions decided by the trier of fact if there is substantial credible evidence to support the finding in the lower court. Recently, in Ankeny v. Grunstead (1976), 170 Mont. 128, 551 P.2d 1027, 1031, this Court noted: "We keep in mind the rule that a trial court's findings will not be disturbed on appeal where there is substantial evidence to support them." Here, the jury listened to the testimony, found substantial evidence and based their verdict on that evidence.

The next issue is directed at whether the factual situation warrants recovery. On this issue appellant is attempting to raise factual issues that were resolved by the jury. The definition of an exclusive or nonexclusive contract and the rights of the parties under the contract were determined by the lower court. The question of resolving ambiguities and the position of this Court on that issue has been clearly considered in previously cited cases. See S-W Co. v. Schwenk, supra, and Dooling v. Casey, supra.

As previously noted, this Court will only set aside the

-8-

be entitled to his compensation.' Ice v. Max-
well, 61 W.Va. 9, 55 S.E. 899. 'It is suffi-
cient 'to entitle real estate brokers to their
commissions if a sale is effected through
their agency as its procuring cause, although
the sale may be made by the owners of the
property, if by their exertion the purchaser
and the owner are brought together and a sale
results therefrom.' Plant v. Thompson, 42 Kan.
664, 22 Pac. 726. . ." 127 P. at 332.

The law in this state is well settled. The broker need
not do everything to complete the sale but only be responsible
for bringing the parties together. In Shober v. Dean (1909),
39 Mont. 255, 102 P. 323, 324, this Court set the standard
which should judge broker causation:

". . . It appears to us that there can be but one
answer: It was intended that, if the efforts of
Shober set in motion a chain of events which finally
culminated in a sale of the property, then he should
recover the maximum fee; . . ."

The facts in this case fit the Shober definition on all
fours. Respondent placed an advertisement in the newspaper
which accidentally named an erroneous price. As a result of
that advertisement, Scilley, the eventual buyer, called
respondent and obtained the location and identification of
the property and the sellers. Because it is not a normal
practice for the real estate agent to pass this information
to the buyer when the agent has a nonexclusive listing,
respondent immediately called appellant and told her that
she had advised Scilley who the owners were and what prop-
erty was for sale and that Scilley was her customer. This
call only related to Scilley, as respondent had not given
appellant's name or a description of the property to any
other callers.

Shortly after this conversation, respondent went to
Billings, met with Scilley and discussed the property.
In addition respondent discussed the possibility of Scilley,
who was in the automobile business, giving respondent one
of his vehicles as part of a commission. Within two days of

-10-

decision of the trier of fact when it lacks substantial and supporting credible evidence. Here, the facts previously set forth, as well as the actions of the parties, indicate the parties clearly intended to perform this contract. Both parties did all things necessary and proper to fully perform the contract. It was only when it became necessary to pay the commission that appellant attempted to ignore her agreement with respondent.

The next issue is directed at whether the requirements of the real estate listing agreement were sufficiently met by the broker to allow the collection of her commission.

Appellant argues that this Court in considering her appeal should use the definition of a sale made set forth in recent cases to review the lower court judgment. Particularly cited and relied upon by appellant is Diehl and Associates, Inc. v. Houtchens (1977), 173 Mont. 372, 567 P.2d 930. Our holding there is clearly distinguishable. In Diehl no sale took place, while in the present case we have a concluded transaction. The question here is whether the broker is entitled to a commission from the sale.

Diehl is not the only statement of Montana law regarding the interpretation of brokerage contracts. The question we have before us here is whether respondent was the "procuring" force in bringing the buyer and the seller together.

It has long been the law of Montana, see Shober v. Blackford (1912), 46 Mont. 194, 127 P. 329, that the ultimate sale terms need not be what the broker's contract states, but only that the seller and the buyer were brought together by the broker. In Shober we stated:

> ". . . 'Where an agent contracts to furnish a
> purchaser for land at a stipulated price and
> such agent does furnish a purchaser whom the
> owner accepts, and in the negotiations of the
> contract the owner agrees upon and accepts a
> different price from that at which the agent
> was instructed to sell, still such agent would

this meeting, respondent, upon going to appellant's ranch to discuss the potential sale, closing costs and other items, met Scilley at the ranch where he was talking to appellant's husband.

In an early Montana case, Apple v. Henry (1923), 66 Mont. 244, 213 P. 444, this Court set forth the law concerning procurement by a broker:

> ". . . The rules which determine the right of a real estate broker to compensation are of now too well settled to admit of much controversy. If the broker finds and introduces to his principal a person who is ready, able, and willing to purchase or exchange upon terms acceptable to the principal, the broker has earned his commission. Laux v. Hogl, 45 Mont. 445, 123 Pac. 949. It is altogether immaterial that the final contract between defendant and Anderson was made without the presence, or even the knowledge, of plaintiff, if it resulted from the means and efforts employed by him [citation omitted], or that it provided different terms from those submitted to plaintiff [citation omitted]. In Shober v. Blackford, 46 Mont. 194, 127 Pac. 329, this court approved the following statement of the rule by Rapalje on Real Estate Brokers:

> "'Where the terms of sale are fixed by the vendor, in accordance with which the broker undertakes to produce a purchaser, yet if, upon the procurement of the broker, a purchaser comes, with whom the vendor negotiates and thereupon voluntarily reduces the price of the property, or the quantity, or otherwise changes the terms of sale, as proposed to the broker, so that a sale is consummated, or terms or conditions are offered which the proposed buyer is ready and willing to accept, in either such case the broker will be entitled to his commission at the rate specified in his agreement with his principal.'" Apple, 213 P. at 445-446.

See also Mohamed v. Robbins (1975), 23 Ariz.App. 195, 531 P.2d 928.

Appellant has further raised the Diehl issue by citing the case of Roscow v. Bara (1943), 114 Mont. 246, 135 P.2d 364. Roscow is distinguishable on the same basis as Diehl. In Roscow no sale took place. In the instant case the sale took place. The arguments addressed above to distinguish Diehl are equally suitable to rebut the issues raised by appellant in citing Roscow.

The next issued raised is whether, even if the Court finds that respondent was required only to find a purchaser ready and willing to enter into the sales agreement, that the terms were not met.

Appellant claims that the final terms accepted by the sellers were different than those given in the original listing and/or discussed by respondent. From this appellant concludes that no commission should be paid. This is clearly erroneous. See Apple, 213 P. at 445-446 (quoted above); Mohamed v. Robbins, supra.

In addition, appellant cites Shober v. Blackford, supra, wherein the appellant argued that the seller was trying to avoid the commission by negotiating a different price. Here, the seller is trying to avoid the commission by excluding the broker from negotiation, and the cases are clearly distinguishable. Appellant is attempting to deal respondent out of her commission by taking over the sale and not advising her of the activities.

The next issue raised is whether it was error for the court to give instructions on procuring cause under the facts of this case. Appellant objects to Instruction Nos. 7, 9, and 14. These are contract interpretation instructions taken almost verbatim from Montana statutes and are applicable to this case.

This Court, in discussing instructions on the interpretation of contracts, noted in Montana/Dakota Utilities v. Lower Yellowstone (1978), _____ Mont. _____, 585 P.2d 626, 35 St.Rep. 1409, the following guidelines for interpreting contracts:

> "In interpreting contracts, our guideposts are
> the statutes enacted by the legislature, and a
> large body of case law. In short, a contract

is to be construed so as to make it definite, operative and reasonable (section 13-709, R.C.M. 1947); words are to be understood in their usual sense (section 13-710, R.C.M. 1947); and technical words are interpreted in the sense used in business to which they relate (section 13-711, R.C.M. 1947). . ." 585 P.2d at 630-631.

In this case, the District Court did just that. The jury was given instructions to use the words in a normal, operative and reasonable sense. In addition, because the instructions set forth the actual law of Montana for the construction of contracts, they are part of the contract itself. See Ryan v. Ald, Inc. (1965), 146 Mont. 299, 406 P.2d 373.

Appellant argues that the court erred in refusing her Instruction Nos. 6 and 7, which read:

"[6.] There is a distinction between a brokerage contract which requires a broker to merely find a purchaser and a brokerage contract which requires a broker to sell, make or effect the sale. In the first case the broker earns his commission when he procures a buyer able, ready and willing to purchase on the seller's terms. A broker employed to sell or effect a sale does not earn his commission until he completes the sale. Completion of the sale where real property is involved amounts to payment of the purchase price and conveyance of the title.

"[7.] As a general rule a broker is not entitled to compensation until he has performed the undertaking assumed by him; and, in the absence of any contrary provisions in this contract, it matters not how great have been his efforts nor how meritorious his services if he is unsuccessful in accomplishing the object of his employer, he is not entitled to compensation."

Appellant contends that these instructions should have been given on the basis of Diehl & Associates, Inc. v. Houtchens, supra. As previously noted, both the trial court and this Court have distinguished Diehl in that in the instant case there was a sale, while in Diehl there was no sale. The

-13-

instructions, therefore, could not properly be founded in the holding of <u>Diehl</u>.

We have also examined appellant's argument concerning the refusal of the District Court to give her proposed Instruction No. 10 which read:

> "You are instructed that in order to recover a commission on a sale a broker must prove by a preponderance of the evidence that he performed under the terms of the agreement."

We find no error in the refusal of this instruction, as it was covered by given Instruction No. 5.

The court properly instructed the jury, and we find no error.

Finally, appellant raises the issue of whether it was error in not allowing her attorney to argue for a lesser commission. It was appellant's contention, on argument, that respondent was not entitled to a commission on the sale of all the property, but only upon the interest owned by appellant. This was objected to by respondent's counsel at the time of argument several times on the basis that the court had instructed the jury, in Instruction No. 21, on the method of calculating the damages in the event there was a verdict for plaintiff. The arguments being made by counsel for appellant were clearly contrary to these instructions. We find no error in the objection by respondent to the argument of appellant's counsel.

The judgment is affirmed.

_____
Justice

-14-

We concur:

_____
Chief Justice

_____

_____

_____
Justices